**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York  10022
Telephone: (212) 603-6300
**A. Mitchell Greene
Robert M. Sasloff**

*Proposed Attorneys  for the  Debtor and
Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
: Chapter 11
In re: :
: Case No.: 10-
**BERLIN & DENMAR DISTRIBUTORS,** :
**INC.**
:
Debtor. :
:
------------------------------------------------------- X

### APPLICATION FOR ENTRY OF ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND FOR RELATED RELIEF

TO THE HONORABLE BANRUPTCY JUDGE IN THESE PROCEEDINGS:

**Berlin & Denmar Distributors Inc.**, the debtor and the debtor in possession herein (the "Debtor"), by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, pursuant to §§363(c)(2) and 506(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeks (i) the entry of the prefixed order  scheduling a preliminary and final hearing pursuant to Bankruptcy Rule 4001(b)(2) to consider the entry of the Interim Order and the Final Order (each as defined below);  (ii) the entry of a preliminary

503092

order in substantially the form annexed hereto as Exhibit "A" (the "Interim Order") authorizing the Debtor to use cash collateral as that term is defined in §363(a) of the Bankruptcy Code (the "Cash Collateral") in accordance with the budget (the "Budget") set forth as Exhibit "B" annexed hereto, pending a final hearing, (iii) the entry of a final order (the "Final Order"), substantially in the form of Exhibit "C" annexed hereto authorizing the Debtor to use Cash Collateral, and (iv) such other and further relief as is appropriate (the "Cash Collateral Motion"). In support thereof the Debtor states:

## BACKGROUND AND SUMMARY OF RELIEF REQUESTED

1. The Debtor operates a food distribution business offering primarily quality meats and cheeses from a cooperative unit located in the Hunts Point Cooperative Market, the largest wholesale food distribution and processing center in the World. Since its founding in 1995, the Debtor's operation had initially sustained substantial growth resulting in the Debtor at its peak, employing around 40 employees. Currently the Debtor employs 34 people.

2. In or around 2006 Louis Stendardi, who came into the Debtor's business in 1998 as a shareholder, left amid a hostile dispute. Although Mr. Stendardi's employment contract contained a non-compete provision, Mr. Stendardi, after a long arbitration, opened his own competing distributor, taking with him some of the Debtor's business.

3. Additionally, Ray Millan, another former shareholder in the Debtor also left and opened up his own distributor, taking some more of the Debtor's revenue. Between Messrs. Millan and Stendardi, the Debtor's lost approximately 20% of its profits.

4. Additionally the Debtor, when it negotiated its union contract, had calculated the profits that the two former shareholders diverted. With the loss of revenue, the union contract has been a major burden to the Debtor's remaining business and is one of the principal reasons precipitating the filing for bankruptcy. The actual collective bargaining agreement expired earlier this year.

5. The Debtor's secured lender is Signature Bank ("Secured Lender"). The Secured Lender has provided the Debtor with a five (5) year term $150,000 loan and a $450,000 revolving line of credit.

6. The Debtors anticipated revenues on a monthly basis range from $2.8 million to $4 million. The Secured Lender may claim that those funds in the Debtor's hands are "Cash Collateral" as defined in the Bankruptcy Code. The Debtor also generates cash flow on an ongoing basis from business operations which the Secured Lender may also claim is Cash Collateral.

## THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

7. The Debtor has insufficient cash to meet ongoing obligations necessary to operate its business. Specifically, without the use of cash collateral the Debtor cannot mainatin its business. Built into the Debtor's immediate need for use of cash collateral is the requirement to pay its ongoing operating expenses, including equipment rental, equipment maintenance, insurance (professional liability and otherwise) and payroll. The Debtor employs

approximately 34 people in its business and without the use of cash collateral, the employee's jobs are in jeopardy.

8. Based on the foregoing, it is evident that the consequences of leaving the Debtor without access to its cash on hand will have a material adverse effect on the Debtor's estate and its creditors.

## CASH COLLATERAL

9. The Debtor estimates that its gross revenues range from approximately $2.8 million to $4 million per month. The Debtor has prepared a proposed Budget covering the next fifteen (15), thirty (30), sixty (60) and ninety (90) days periods following the commencement of the case. A copy of the proposed Budget is annexed hereto as Exhibit "B". The Debtor is seeking authorization to pay the sums set forth in the budget, on a rolling basis, with a variance of no more than five (5%) percent on any one line item. The items in the Budget are only those expenditures which are necessary to maintain and operate the business during the Chapter 11 proceeding.

10. Based upon the Debtor's operating projections for the next ninety (90) day period, the Debtor will operate at a slight loss.

## ADEQUATE PROTECTION

11. To adequately protect the Secured Lender with respect to the cash collateral utilized during this case, the Debtor is (a) maintaining the value of its Business though such

expenditures, (b) will maintain the cash it collects over and above the authorized expenditures for the benefit of the secured creditor, and (c) grant the Secured Creditor a security interest in post-petition assets to the extent the Debtor utilizes cash collateral as well as a super-priority administrative expense claim (subject to the fees of the United States Trustee and certain fees and expenses incurred by professionals retained in this case). The foregoing, the Debtor believes, adequately protects Secured Lender's interest in the cash collateral.

## **RELIEF REQUESTED**

12. The Debtor seeks an Order scheduling a Preliminary Hearing to expend the sums set forth in the column labeled "Budget" on Exhibit "A" (subject to a 5% line item variance). At the Preliminary Hearing, the Debtor will seek authorization to use Cash Collateral pending the Final Hearing, and entry of the Interim Order. The Budget will simply be rolled over for such additional period pending the Final Hearing.

13. Accordingly, pursuant to §§363(c)(2) and 506(c) of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules, the Debtor seeks (i) the entry of the Interim Order authorizing the Debtor to use cash collateral pending a Final Hearing, (ii) the entry of the Final Order, authorizing the Debtor to use cash collateral, (iii) the entry of the prefixed Scheduling Order scheduling Preliminary and Final Hearings pursuant to Bankruptcy Rule 4001(b)(2) to consider the entry of the Interim Order and the Final Order; and (iv) such other and further relief as is appropriate.

## REQUEST FOR RELIEF UNDER §506(c)

14. Absent the use of Cash Collateral to pay the operating expenses, the Debtor submits that the value of the Debtor's business will decline. Moreover, the inability to make timely payment of post-petition services will erode, if not eliminate the Debtor's ability to reorganize. The immediate payment of the operating expenses is therefore necessary to preserve the Debtor's estate. Accordingly, the Court should authorize the Debtor to expend such sums from the cash collateral as are necessary to pay operating expenses to preserve the collateral under §506(c) of the Bankruptcy Code.

## NOTICE

15. Bankruptcy Rule 4001(b)(2) provides that a court may not commence a final hearing with respect to a debtor's motion to use cash collateral until fifteen (15) days after service of the motion. However, if the motion so requests, Bankruptcy Rule 4001(b)(2) authorizes a Court to hold a preliminary hearing prior to the expiration of the fifteen (15) day period. The Debtor requests that this Court conduct a Preliminary Hearing as soon as possible pursuant to Bankruptcy Rule 4001(b)(2) and enter the Interim Order authorizing it to use cash collateral.

16. Pending such Preliminary Hearing, the Debtor requests that the Court grant it authorization to pay expenses as set forth on its Budget, all of which are necessary–indeed critical– to avoid immediate and irreparable harm to the estate. The Secured Lender and its counsel have been given advance notice of this Cash Collateral Motion and has not objected to the emergency relief sought herein pending the Preliminary Hearing.

17. In accordance with Bankruptcy Rule 4001(b)(2), the Debtor proposes to give notice of this Application to the Office of the United States Trustee, the Secured Lender, all other scheduled secured creditors, if any, and the Debtor's twenty largest unsecured creditors. The Debtor intends to give notice by serving a copy of this Application, together with the exhibits hereto, and the prefixed order to show cause on all such entities as the Court directs.

## CONCLUSION

18. No prior application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtor seeks (i) the entry of the prefixed order to show cause scheduling Preliminary and Final Hearings to consider the entry of the Interim Order and the Final Order, (ii) the entry of the Interim Order authorizing the Debtor to use Cash Collateral pending a Final Hearing, (iii) the entry of the Final Order, authorizing the Debtor to use Cash Collateral, and (iv) such other and further relief as may be just and proper.

**Dated:** New York, New York
October 20, 2010

                                **ROBINSON BROG LEINWAND GREENE**
                                    **GENOVESE & GLUCK P.C.**
                                **Proposed Attorneys for the Debtor**
                                875 Third Avenue
                                New York, New York 10022
                                212-603-6300

                                By: /S/A. Mitchell Greene_
                                    **A. Mitchell Greene**